## UNITED STATES *v.* KINDRED.

*(Circuit Court, E. D. Virginia.* December 10, 1880.)

1. **JUSTICE OF THE PEACE—ACT OF CONGRESS—INDICTMENT—FEDERAL COURT.**—The wilful and corrupt violation of an act of congress by a justice of the peace of a state, in the exercise of his office, will render him liable to indictment in federal court.—[ED.

Motion to Quash Indictment.

*L. L. Lewis,* U. S. Att'y, appeared for the prosecution.

*John Lyon,* for the defence, relied in support of his plea, demurrer, and motion on Broom's Legal Maxims, 66–7; *Missouri* v. *Lewis,* 91 U. S. 31; *Ex parte Virginia,* 90 U. S. 344; *Bradwell* v. *State,* 16 Wall. 139; *Slaughter-house Cases,* Id. 77; *Lane County* v. *Oregon,* 7 Wall. 76; *Kentucky* v. *Dennison,* 24 How. 107; *Ableman* v. *Booth,* 21 How. 516; 18 St. at Large 355; and *Queen* v. *Badger,* 45 Eng. C. L. R. 468.

HUGHES, D. J. This indictment charges the defendant with unlawfully and corruptly endeavoring to influence, obstruct, and impede the due administration of justice in the district court of the United States for the eastern district of Virginia, in having, upon a warrant sued out by one William Myrick, dealt with J. P. Davis, a witness under recognizance in the United States court, in the manner set forth in the indictment; that is to say, the indictment, after setting out the facts connected with the warrant, including whipping and unlawful imprisonment, charges that Kindred did issue said

warrant of arrest, and did impose said sentence upon the said Davis to influence and obstruct him as a witness in said court of the United States, and with the further intent to influence, obstruct, and impede the due administration of justice in the said court.

There is a motion to quash the indictment for want of jurisdiction; a demurrer to the indictment based on the same ground of defence; and a special plea in bar setting out that Kindred, in all that he did, acted as a judicial officer, and claiming that if he acted only erroneously he is exempt from trial, because his act was judicial, and can only be reviewed by a state court of appellate jurisdiction; and if he acted corruptly he is amenable only to the authorities and courts of Virginia, and is not amenable to trial and punishment by any court of the United States. To this plea there is a demurrer by the United States.

It is not pretended, if there were no charge of wilful malfeasance or corruption here, but only of erroneous action by the justice of the peace in his judicial capacity, that the court of the United States would have jurisdiction to review the erroneous judgment committed in the discharge of a judicial function. Furthermore, although justices of the peace and all judicial officers are liable to indictment or arraignment in some manner for corrupt acts committed in the exercise of their judicial functions, yet it is not pretended that a court of the United States may try an indictment brought for every such corrupt judicial act against judicial officers of the state. The United States court has no such general power. But it is contended by the United States that if a law of congress, passed as necessary and proper for carrying into effect any constitutional provision, is corruptly violated by any person, even though he be a judicial officer of a state, such person is amenable to prosecution in a United States court for such offence.

The federal government, its officers, and courts have certain well-defined powers. The government may establish a post-office system, do all acts necessary to conducting it efficiently, pass laws for punishing depredations upon the

mails, and empower its courts to enforce those laws. So it may establish a customs system, an internal revenue system, a judiciary system, and do other things especially authorized by the national constitution; and it may pass all laws necessary and proper for carrying into execution the specific powers granted by that instrument. The peculiarity of our federal government, distinguishing it from all other confederacies previously existing, and from the confederacy of 1780 to 1789, which existed under the old articles of confederation, is that it is empowered to act upon individuals in the states in the exercise of the powers that have been adverted to, and is not limited in its powers to demands upon the constituent states in their corporate capacity. Its laws affect individuals, its authority controls individuals, its officers deal with individuals, its courts have cognizance of individuals, and, as the law is not a respecter of persons, if any individual wilfully and corruptly violates a law of Congress it will in general not avail him to plead that he is exempt from accountability by reason of his being an officer of a state, and did the act with which he is charged as an officer of the state.

It is very true, as has been decided in the cases cited at bar by defendant's counsel, that state officers are, as such, exempt from the operation of certain laws of the United States. A state officer's salary, for instance, cannot be taxed by the United States, because the power to tax would carry the power to destroy, and it is incompatible with the comity which should subsist between the federal government and those of the states that any general law of congress taxing salaries should be extended to the salaries of state officers. See *Collector* v. *Day,* 11 Wall. 125. So a state officer, appointed under state laws, responsible to state courts, and charged with duties and service to the state, is not in general liable to process from United States courts requiring him to perform positive duties imposed by laws of congress. See *Kentucky* v. *Dennison,* 24 How. 107.

But I am sure that these and like cases which have been decided, and were cited by defendant's counsel, none of them

go to the extent of deciding that a state officer who wilfully and corruptly violates a law of congress, passed for any of the constitutional purposes which have been indicated, is, *qua* state officer, clothed with impunity for his crime, and exempted from punishment. The laws of the United States operate upon individuals without any reference in general to their relations to the state. The accident of their being state officers does not in general affect their liability as citizens to the ordinary process and jurisdiction of the courts of the United States, and, as before said, if they commit crimes against the United States they are punishable for such crimes.

Now, in the present case, a law is charged to have been violated which is necessary and proper to securing the efficient administration of their functions by the courts of the United States. There could be no proper administration of justice if the strong and influential were at liberty to arrest, imprison, and otherwise intimidate the weak and timid, and detain them from attendance as witnesses before the United States courts. Congress has constitutional power to pass laws proper for preventing the commission of this offence, and the plea and demurrer of the defendant virtually admits that he would be amenable to these laws but for the fact that he, in the acts complained of, was acting in the judicial capacity of a justice of the peace of the state of Virginia. So that the only question for consideration is whether a justice of the peace of a state may, in the exercise of his office, wilfully and corruptly violate a law of the United States. If this indictment merely charged the defendant with an erroneous judgment it could not be sustained, for errors committed even by so humble a judicial officer as a justice of the peace cannot be reviewed, corrected, or punished by indictment in any court, but must go up to an appellate court for correction on appeal or writ of error. But this indictment charges a wilful and corrupt motive and action on the part of this justice: charges an offence which is especially made punishable by a constitutional law of congress passed in 1831.

That justices of the peace and all judicial officers are pun-

ishable at common law for corrupt conduct in their judicial office, when so expressly charged by indictment, is too well settled to need argument. The case of *Jacobs* v. *The Commonwealth*, 2 Leigh, 709, is an instance in which the courts have recognized this liability in the state of Virginia.

It is hardly worth while to notice the pretension that if this defendant is indictable at all it is only in a court of the state. In general, offences in violation of acts of congress are indictable only in courts of the United States. In some instances in the past a few offences of this class have been referred, by express provision of law, to state courts for trial; but such is not the policy of congress, and the practice, always exceptional and occasional, may now be regarded as abandoned. So the only question is whether state justices of the peace are liable, under an act of congress, to indictment in United States courts for a statutory offence, charged to have been committed wilfully and corruptly.

I think, after what has been said, that this proposition is too plain for argument, and I will overrule the defendant's demurrer, deny his motion to quash, and sustain the prosecution's demurrer to the plea.